IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-F-05-333 OWW |
| | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION TO SUPPRESS EVIDENCE |
| Plaintiff, | ) | RE JULY 30, 2004 SEARCH |
| | ) | WARRANT ON GROUND OF FACIAL |
| vs. | ) | INVALIDITY (Doc. 39) |
| | ) | |
| | ) | |
| MICHAEL CLAY PAYTON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant Michael Clay Payton moves to suppress all evidence obtained pursuant to three search warrants for 544 Spur Court, Merced, California:

1.  Search warrant issued by the State of California, Merced County Superior Court on July 30, 2004;

2.  Search warrant issued by the State of California, Merced County Superior Court on October 4, 2004; and

3.  Search warrant issued by the United States District Court for the Eastern District of California on September 1, 2005.

1

1   The sole issue presently before the Court is whether the

2   search of 544 Spur Court on July 30, 2004 was unlawful under the

3   Fourth Amendment because the July 30, 2004 search warrant was

4   facially invalid.[1]

5   Oral argument was conducted on December 12, 2006 and January

6   30, 2007.  An evidentiary hearing was conducted on January 30,

7   2007 and testimony taken from the Honorable John D. Kirihara,

8   judge of the Merced County Superior Court and issuer of the July

9   30, 2004 and October 4, 2004 search warrants.  Supplemental

10  briefing was completed on February 7, 2007.

11  **A.  <u>Background</u>.**

12  The July 30, 2004 search warrant, captioned "State of

13  California - County of Merced Search Warrant and Affidavit" was

14  issued by the Honorable John D. Kirihara, judge of the Merced

15  County Superior Court.  The search warrant stated in pertinent

16  part:

17                       (AFFIDAVIT)

18           <u>Jeffrey R. Horn</u>, Swears under oath that the
             facts expressed by him in this search warrant
19           and affidavit and incorporated statement of
             probable cause are true and that based
20           thereon he has probable cause to believe and
             does believe that the property and or person
21           described below is lawfully seizable pursuant
             to Penal Code section 1524, as indicated
22           below, and is now located at the locations
             set forth below.  Wherefore, affiant requests
23           that this Search Warrant be issued.

24  _____

25       [1]Defendant raises other grounds in support of suppression of
    the July 30, 2004 search warrant as well as the later two search
26  warrants.  Those grounds will be separately argued and resolved.

```
 1        ...

 2                    (SEARCH WARRANT)

 3        THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY
          SHERIFF, POLICE OFFICER, PEACE OFFICERS IN
 4        THE COUNTY OF MERCED: proof by affidavit been
          made before me by Jeffrey R. Horn.
 5
          There is probable cause to believe that the
 6        property and/or person(s) described herein
          may be found at the location set forth herein
 7        and is lawfully seizable pursuant to Penal
          Code section 1524 as indicated by 'x' in
 8        that:

 9        ...

10        X    it was used as the means of
               committing a felony,
11
12        X    it is possessed by a person with
               the intent to use it as a means of
13             committing a public offense or is
               possessed by another to whom he or
14             she may have delivered it for the
               purpose of concealing it or
15             preventing its discovery,

16        X    it tends to show that a felony has
               been committed or that a particular
17             person has committed a felony ...

18        ...

19        YOU ARE THEREFORE COMMANDED TO SEARCH: 544
          Spur Ct. ... located in the City of Merced,
20        County of Merced, State of California.

21        FOR THE FOLLOWING PROPERTY/PERSON: Melinda
          Reyes Fuentes, 11-10-85, Blk, Bro, 5-02, 170,
22        and the property listed in attachment A.

23        AND TO SEIZE IT IF FOUND and bring it
          forthwith to me, or this court, at the
24        courthouse of this court.  This Search
          Warrant and incorporated affidavit was sworn
25        to as true and subscribed before me this 30th
          day of July, 2004 ... Wherefore, I find
26        probable cause for the issuance of this
          Search Warrant and do issue it.
```

3

Officer Horn's statement of probable cause stated in pertinent part:

> Because of my experience and training I know that drug dealers will have evidence of sales on their computers.  I would ask that this warrant allow me to look at computer files, and seize the computer if it shows evidence of criminal behavior.

Attachment A to the search warrant stated in pertinent part:

> Methamphetamine and items commonly used to cut methamphetamine, weighing devices such as scales used to weigh methamphetamine, measuring devices such as spoons, plastic baggies and other containers such as cloth or plastic containers which are used to contain and package methamphetamine in either powder or base form.  Articles of personal property intending to establish the identity of the person(s) in control of the premises being searched; rent or house payment receipts, keys, canceled mail envelopes, utility bill receipts, telephone bills, address books, real estate documents or lease applications. Money, which has been gained from the profit and sales of narcotics, shall be seized at this time and forfeited under provisions of Sections 11470 and 11488 of the California Health and Safety Code.  Your Affiant further requests this search warrant allows him to seize negotiable instruments and other items which are also subject to forfeiture under provisions of Section 11470 and 11488 of the California Health and Safety Code.  Sales ledgers showing narcotics transactions such as pay/owe sheets, telephone recording equipment and tapes, which are included in the equipment that are pertinent and contain information dealing with hand-to-hand transactions, shall be included.  Financial records of the person(s) in control of the residence or premises, bank accounts, loan applications, income and expense records, safety deposit box keys and records, property acquisitions and notes, and any lease or rent applications.  Personal identification that will identify the person(s) of the residence at which the search warrant is taking place

4

1   will also be included at this time.

2       At the January 30, 2007 evidentiary hearing, Judge Kirihara

3   testified that, based on his practice and experience, the

4   probable cause statement, the affidavit, the search warrant and

5   the attachment are presented for issuance as a single document

6   and are issued to the searching officer(s) as a single document.

7   Upon execution, this single document is filed with the Merced

8   County Superior Court.  Judge Kirihara testified that the

9   probable cause statement is considered part of the actual search

10  warrant.  With regard to the July 30, 2004 search warrant, Judge

11  Kirihara testified that Officer Horn presented the probable cause

12  statement, the affidavit, Attachment A and the proposed search

13  warrant to him, that he, Judge Kirihara, reviewed all of these

14  documents, administered the oath of Officer Horn, and had Officer

15  Horn sign the affidavit.  Judge Kirihara then signed the search

16  warrant.  Judge Kirihara was aware that the probable cause

17  statement included a request for authorization to search any

18  computer(s) at the residence and intended that the search warrant

19  include that authorization.  Judge Kirihara testified that he

20  failed to notice that Attachment A did not list a computer in the

21  description of items authorized to be searched and seized by the

22  search warrant and that the failure to include a computer in

23  Attachment A was inadvertent.

24       **B.**   **<u>Facial Invalidity of July 30, 2004 Search Warrant</u>**.

25       "[S]earches conducted by state officers with state warrants

26  issued by state judges, with minimal or no federal involvement,

are not to be judged by the specific provisions of Rule 41 but must only conform to federal constitutional standards." *United States v. Piver*, 899 F.2d 881, 882 (9th Cir.1990). The July 30, 2004 search warrant is such a warrant.

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Defendant contends that neither the search warrant nor Attachment A to the search warrant authorized the search and seizure of Defendant's computer and, thus, the particularity requirement of the Fourth Amendment is not satisfied.

"Particularity is the requirement that the warrant must clearly state what is sought." *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 856-857 (9th Cir.1991).

Defendant relies on *Groh v. Ramirez*, 540 U.S. 551 (2004) as support for his position that the July 30, 2004 search warrant is facially invalid.

In *Groh v. Ramirez*, the petitioner, an agent with the Bureau of Alcohol, Tobacco and Firearms, prepared and signed an application for a search warrant to search respondents' ranch. The application stated that the search was for specified weapons, explosives and records. The search warrant application was supported by petitioner's detailed affidavit setting forth his basis for believing these items were on the ranch and was accompanied by a search warrant form that the ATF agent

6

1 completed.  The Magistrate Judge signed the warrant form even

2 though it did not identify any of the items that petitioner

3 intended to seize.  The portion of the search warrant calling for

4 a description of the "person or property" to be seized described

5 respondents' house, didn't describe the items to be seized, and

6 did not incorporate by reference the application's itemized list.

7 Upon execution of the search warrant, no illegal weapons or

8 explosives were found.  Petitioner left a copy of the warrant,

9 but not the application, with respondents.  Respondents sued

10 Petitioner and others, claiming a violation of the Fourth

11 Amendment.  The Supreme Court held that the search warrant was

12 "plainly invalid" because it failed to describe with

13 particularity the items to be seized.  *Id.* at 557.  The Supreme

14 Court stated:

15         The fact that the *application* adequately
         described the 'things to be seized' does not
16         save the *warrant* from its facial invalidity.
         The Fourth Amendment by its terms requires
17         particularity in the warrant, not in the
         supporting documents .... And for good
18         reason: 'The presence of a search warrant
         serves a high function,' ... and that high
19         function is not necessarily vindicated when
         some other document, somewhere, says
20         something about the objects of the search,
         but the contents of that document are neither
21         known to the person whose home is being
         searched nor available for her inspection.
22         We do not say that the Fourth Amendment
         prohibits a warrant from cross-referencing
23         other documents.  Indeed, most Courts of
         Appeals have held that a court may construe a
24         warrant with reference to a supporting
         application or affidavit if the warrant uses
25         appropriate words of incorporation, and if
         the supporting document accompanies the
26         warrant ... But in this case the warrant did

7

not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant.  Hence, we need not further explore the matter of incorporation.

Petitioner argues that even though the warrant was invalid, the search nevertheless was 'reasonable' within the meaning of the Fourth Amendment.  He notes that a Magistrate authorized the search on the basis of adequate evidence of probable cause, that petitioner orally described to respondents the items to be seized, and that the search did not exceed the limits intended by the Magistrate and described by petitioner.  Thus, petitioner maintains, his search of respondents' ranch was functionally equivalent to a search authorized by a valid warrant.

We disagree.  This warrant did not simply omit a few items from a list of many to be searched, or misdescribe a few of several items.  Nor did it make what fairly could be characterized as a mere technical mistake or typographical error.  Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence ... blue in color.'  In other words, the warrant did not describe the items to be seized *at all.*  In this respect the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law.

*Id.* at 557-558.  The Supreme Court rejected Petitioner's argument that a search conducted pursuant to a warrant lacking particularity is exempted from the presumption of unreasonableness if the goals served by the particularity requirement, preventing general searches and preventing warrants from being issued on vague or dubious information, are otherwise served.  Petitioner contended that the search at issue satisfied

1  these the scope of the search did not exceed the limits set forth

2  in the application:

> But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit ... In this case, for example, it is at least theoretically possible that the Magistrate was satisfied that the search for weapons and explosives was justified by the showing in the affidavit, but not convinced that any evidentiary basis existed for rummaging through respondents' files and papers for receipts pertaining to the purchase or manufacture of such items ... Or, conceivably, the Magistrate might have believed that some of the weapons mentioned in the affidavit could have been lawfully possessed and therefore should not be seized ... The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request.  Even though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.' ....

> We have long held, moreover, that the purpose of the particularity requirement is not limited to the prevention of general searches ... A particular warrant also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' ....

23  *Id.* at 560-561.

24        *Groh* is not dispositive of this ground for Defendant's

25  motion to suppress.  Here, the July 30, 2004 search warrant

26  omitted to list one item, computers, from the list of items

specifically authorized to be seized.  This is not a situation in which the items to be seized were not described at all in the search warrant.

Although acknowledging that the particularity requirement of the Fourth Amendment may be satisfied by cross-referencing other documents, Defendant contends that the facial invalidity of the July 30, 2004 search warrant cannot be so cured.

"'... [T]he warrant may properly be construed with reference to the affidavit for purposes of sustaining the particularity [requirement], provided that a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.'" *Matter of Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir.1981).

Defendant concedes that the search warrant incorporated Attachment A with suitable words of reference.  However, Attachment A does not list a computer among the items to be seized.  Defendant argues that Officer Horn's statement of probable cause cannot be used to cure the particularity requirement because the search warrant does not incorporate the statement of probable cause with suitable words of reference. Defendant asserts that, in the Affidavit section of the search warrant, Officer Horn only incorporated his statement of probable causes for the purpose of averring his belief that probable cause for the search of the items described in Attachment A existed. Defendant argues that the incorporation of an affidavit for the

10

1   purpose of establishing probable cause is not the same as

2   incorporating an affidavit for the purpose of describing the

3   scope of the search warrant.

4        Defendant contends that, in the cases relied upon by the

5   parties in briefing this issue, the words of incorporation

6   expressly indicated that the scope of the search authorized by

7   the search warrant could be defined by reference to the

8   incorporated affidavit.

9        In *United States v. Johnson,* 541 F.2d 1311 (9th Cir. 1976),

10  a search warrant authorized the search and seizure of "U.S.

11  Currency as described in the affidavit".  *Id.* at 1313.  The Ninth

12  Circuit held that, because the affidavit stated the serial

13  numbers of the currency and because the affidavit was

14  incorporated into the search warrant by suitable words of

15  reference, the search warrant met "the constitutional standard of

16  particularity in description."  *Id.* at 1315-1316.

17       In *Matter of Property Belonging to Talk of the Town*

18  *Bookstore, Inc.*, *supra,* 644 F.2d at 1319, the Ninth Circuit

19  ruled:

20           The warrants in this case commanded the
             executing officers 'to seize only the above
21           specified property as described in the
             Affidavits attached to this search warrant
22           ...' and 'to seize only those books,
             magazines, and films which depict the
23           specific sex acts described in the
             Affidavits.' ....

24           ...

25
             The warrants expressly limited the property
26           subject to seizure to that described in

11

> detail in the incorporated affidavits; '[a]s to what [was] to be taken, nothing [was] left to the discretion of the officer executing the warrant' ... Since the affidavits were physically attached to the warrants, the persons on the premises at the time of the search were provided with notice of which items the officers were authorized to seize.
>
> We conclude that any generality in the warrants was cured by the incorporation and attachment of the affidavits.

In *United States v. Fannin*, 817 F.2d 1379, 1384 (9th Cir.1987), the Ninth Circuit held in pertinent part: "Although the 'other evidence' language of the warrant is not sufficiently particular standing alone, that deficiency was cured by the particularity of the attached and incorporated affidavit."

In *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir.1989), the Ninth Circuit rejected the Government's argument that the overbreadth of the search warrant at issue could be cured by the specificity of the affidavit supporting the search warrant because, *inter alia*, the affidavit was not expressly incorporated into the warrant.

In *United States v. Towne*, 997 F.2d 537 (9th Cir.1993), in the space reserved for the description of what the executing officers was to search for and seize, the police officer seeking the search warrant typed, "See Attachment B". *Id.* at 539. The Ninth Circuit held in pertinent part: "There is no question that Attachment B was incorporated by reference in the search warrant." *Id.* at 548-549. *See also United States v. Van Damme*, 48 F.3d 461, 465 (9th Cir.1995):

12

1
2
3
4
>           [T]he search warrant did not tell the
>           officers executing it what to seize.  In the
>           place on the form for listing what the
>           officers were to seize, the search warrant
>           said 'SEE ATTACHMENT # 1.'  But nothing was
>           attached.  On its face, the warrant is
>           therefore insufficient.

5   There is no question that the disputed search warrant did

6   not use suitable words of reference to incorporate the statement

7   of probable cause into the description of property in the search

8   warrant to be seized.  However, Judge Kirihara testified that he

9   specifically intended that computers be included in the list of

10  items to be seized and that the failure to include computers was

11  the result of oversight.

12      In *Doe v. Groody,* 361 F.3d 252 (3rd Cir.), *cert. denied*, 543

13  U.S. 873 (2004), a case relied upon by both parties, following a

14  long-term investigation of John Doe for suspected narcotics

15  dealing, a state narcotics task force sought a search warrant for

16  John Doe and his residence.  The affidavit in support of the

17  search warrant requested permission to search John Doe's

18  residence and his Volkswagen for drugs, paraphernalia, money,

19  drug records and other evidence.  Additionally, the affidavit

20  stated:

21
22
23
24
25
>           The search should also include all occupants
>           of the residence as the information developed
>           shows that [Doe] has frequent visitors that
>           purchase methamphetamine.  These persons may
>           be on the premises at the time of the
>           execution of the search warrant and many
>           attempt to conceal controlled substances on
>           their persons.
>
>           ...

26

1          This application seeks permission to search
all occupants of the residence and their

2          belongings to prevent the removal,
concealment, or destruction of any evidence

3          requested in this warrant.  It is the
experience of your co-affiants that drug

4          dealers often attempt to do so when faced
with impending apprehension and may give such

5          evidence to persons who do not actually
reside or own/rent the premises.  This is

6          done to prevent the discovery of said items
in hopes that said persons will not be

7          subject to search when police arrive.

8          ...

9          As a result of the information developed,
your affiant requests that a search warrant

10         ... be issued for ... the residence of [John
Doe] and all occupants therein.

11

12 The affidavit was signed on the last page by a police officer,

13 under whose signature was the entry: "Sworn and subscribed before

14 District Justice James R. Ferrier 21-3-03, this 6th of March

15 1998.'  Under the legend was the Magistrate's signature, followed

16 by the phrase "Issuing Authority" and the impression of a rubber

17 stamp.  The warrant was attached to a separate printed face

18 sheet, entitled "Search Warrant and Affidavit."  That form

19 contained boilerplate introductory language, followed by open

20 blocks for someone to type in information.  The first block asked

21 for the identity of the "items to be search [sic] for and

22 seized."  The following blocks asked, in turn, for a "[s]pecific

23 description of premises and/or persons to be searched"; the

24 "[n]ame of owner, occupant or possessor of said premises to be

25 searched"; a description of the nature and date of the statutory

26 violations; and for the basis of "[p]robable cause belief."

14

These printed blocks were completed.  In response to the
questions "[d]ate of violation" and "[p]robable cause belief,"
the face sheet specifically referred to the typed affidavit of
probable cause attached to the warrant.  But in answering the
question "[s]pecific description of premises and/or persons to be
searched," the attached typed affidavit was not mentioned.
Rather, the form contained a typewritten entry naming only John
Doe, giving his description, date of birth and social security
number, and identifying and describing John Doe's residence.  The
printed warrant and affidavit face sheet was signed by the same
police officer and "issuing authority" who had signed the
underlying affidavit.  When the officers went to execute the
search warrant, accompanied by a female meter patrol officer,
they meet John Doe at his residence and took him inside.  Once
inside, the officers found no visitors, but only John Doe's wife
and daughter.  The officers searched the two women for
contraband.  No contraband was found on either of them.  Doe's
wife and daughter sued the officers and others under 42 U.S.C. §
1983.  The police officers appealed to the Third Circuit
following the denial by the District Court of their motion for
summary judgment based on qualified immunity.  *Id.* at 235-237.

The police officers argued on appeal that the search of both
females was covered by the warrant for the search of the house
and was supported by probable cause.  The Third Circuit rejected
this argument:

> The face of the search warrant here ... does

1    not grant authority to search either Jane or
     Mary Doe.  The block designated for a
2    description of the person or place to be
     searched specifically names John Doe, and
3    identifies and describes his residence.
     Nothing in that portion of the printed
4    warrant refers to any other individual, named
     or unnamed, to be searched.  Seeking to
5    remedy this omission, the officers argue that
     the warrant should be read in light of the
6    accompanying affidavit which requested
     permission to search 'all occupants' of the
7    residence.  They conclude that the warrant
     should be read in 'common sense' fashion, as
8    supplemented by the affidavit.  If that
     contention is correct, then police had legal
9    authority to search anybody that they
     encountered inside the house when they came
10   to execute the warrant.

11   To be sure, a warrant must be read in a
     common sense, non-technical fashion ... But
12   it may not be read in a way that violates its
     fundamental purposes.  As the text of the
13   Fourth Amendment itself denotes, a particular
     description is the touchstone of a warrant
14   ... The requirement of a particular
     description *in writing* accomplishes three
15   things.  First, it memorializes precisely
     what search or seizure the issuing magistrate
16   intended to permit.  Second, it confines the
     discretion of the officers who are executing
17   the warrant ... Third, it 'inform[s] the
     subject of the search what can be seized.'
18   ... For these reasons, although a warrant
     should be interpreted practically, it must be
19   sufficiently definite and clear so that the
     magistrate, police, and search subjects can
20   objectively ascertain its scope. ....

21   As the officers correctly observe, it is
     perfectly appropriate to construe a warrant
22   in light of an accompanying affidavit or
     other document that is incorporated within
23   the warrant.  But to take advantage of this
     principle of interpretation, the warrant must
24   expressly incorporate the affidavit. ....

25   In this case, there is no language in the
     warrant that suggests that the premises or
26   people to be searched include Jane Doe, Mary

1  Doe, 'all occupants', or anybody else, save
   John Doe himself.  Other portions of the face
2  sheet which describe the date of the
   violation and the supporting probable cause
3  do refer to the attached typed affidavit.
   But this fact is actually unhelpful to the
4  officers, since it demonstrates that where
   the face sheet was intended to incorporate
5  the affidavit, it said so explicitly.  As a
   matter of common sense, as well as logic, the
6  absence of a reference to the affidavit must
   therefore be viewed as negating any
7  incorporation of the affidavit.

8  *Id.* at 238-240.

9       The Third Circuit acknowledged that there two categories of

10 decisions in which an affidavit has been used to cure a defective

11 search warrant even when it has not been incorporated within that

12 search warrant.  Of relevance is the first category of cases:

13           The first embraces those circumstances in
             which the warrant contains an ambiguity or
14           clerical error that can be resolved with
             reference to the affidavit.  In these
15           situations, it is clear that the requesting
             officers and the magistrate agreed on the
16           place to be searched or item to be seized,
             but there is an obvious ministerial error in
17           misidentifying the place or item.  *See, e.g.,*
             *United States v. Ortega-Jimenez*, 232 F.3d
18           1325, 1329 (10th Cir.2000)(ambiguous term);
             *United States v. Simpson*, 152 F.3d 1241, 1248
19           (10th Cir.1998)(internal inconsistency in
             warrant).  Reliance on the affidavit in these
20           circumstances neither broadens nor shrinks
             the scope of the warrant, but merely
21           rectifies a '[m]inor irregularit[y].'  *United*
             *States v. Johnson*, 690 F.2d at 65 n.3
22           (quoting *Ventresca*, 380 U.S. at 108 ...).

23           The omission of Jane Doe, Mary Doe, or 'all
             occupants' from the warrant in this case
24           cannot be viewed as the sort of ambiguity or
             misidentification error that can be clarified
25           by inspecting the affidavit.  This warrant
             has no ambiguous or contradictory terms on
26           its face.  Rather, the language of the

17

warrant is inconsistent with the language of
the affidavit, because the former does not
grant what the latter sought - permission to
search 'all occupants' of the house.  This is
not a discrepancy as to form; it is a
difference as to scope.  A state magistrate
reviewing a search warrant affidavit might
well draw the line at including unnamed 'all
occupants' in the affidavit because
Pennsylvania law disfavors 'all occupant'
warrants ... Thus, the circumstance of this
warrant is a far cry from those in the
category of warrants which can be 'clarified'
by a separate affidavit.

The United States argues that the failure to include

computers on Attachment A was an inadvertent clerical error as

established by the testimony of Judge Kirihara.

In *People v. Sternberg*, 41 Cal.App.3d 281, 291-292 (1974),

the California Court of Appeal rejected a challenge to the

legality of a search based upon the failure of the magistrate to

sign the search warrant:

It is ... concluded that under the peculiar
circumstances of this case any insufficiency
on the face of the warrant, because the
magistrate inadvertently failed to sign it,
was cured by his affixing his signature at
the earliest opportunity after such omission
was discovered and prior to any challenge to
the warrant.  If there is any danger that the
police will thereby be encouraged to use
blank warrants to conduct searches and
seizures in the hopes that they can be
subsequently signed, if challenged, such
cases may be dealt with as they arise ... The
fact remains that here there was clear and
convincing evidence that the magistrate had
determined that there was probable cause and
had authorized the search and seizure.  No
one's position was changed in reliance on the
omission of the signature and the defect was
promptly cured.

Defendant argues that California case authority supports

18

1  granting the motion to suppress, even though the cases cited are

2  not directly on point.

3      Defendant cites *Call v. Superior Court*, 266 Cal.App.2d 163

4  (1968).  In *Call* the Court of Appeal held that the trial court

5  erred in denying a motion to suppress evidence seized during a

6  night search of defendant's residence pursuant to a search

7  warrant.  The affidavit requested that the warrant authorize a

8  night search but the magistrate neglected to indicate in the

9  warrant any decision he may have made in that regard.  The

10 magistrate issued a form warrant containing alternative language

11 authorizing either a day or unlimited search and did not mark out

12 one of the options.  The Court of Appeals rejected the Attorney

13 General's argument that the affidavit specifically requested a

14 night search be authorized and the magistrate issued the warrant

15 during the nighttime:

16              These circumstances, it is contended, show
              that the magistrate must have intended to
17              authorize a night search.  We do not agree.
              If the inclusion of the request for a night
18              search in the affidavit were to be given the
              effect contended for, the householder's
19              entitlement to an exercise of discretion on
              the part of the magistrate could be avoided
20              by including such a request in the printed
              form of affidavit.  The fact that the
21              magistrate issued the warrant after regular
              office hours likewise does not show that
22              discretion was exercised.  It might just as
              well be the case that the officer went to the
23              magistrate after hours because he knew that
              the magistrate was going out of town the next
24              day.  The statute requires that the
              magistrate must 'insert a direction' in the
25              warrant in order to authorize a night search.
              (Pen. Code, § 1533.)  When a warrant form
26              covering both options is used, the failure of

1          the magistrate to mark the form appropriately
           cannot be held to be equivalent to such
2          insertion.

3    Defendant argues that the circumstances in *Call* are similar to

4    those at issue here:

5          The Fourth Amendment requires that the scope
           of search pursuant to a warrant not exceed
6          that authorized by a neutral, detached
           magistrate.  Allowing a search for items ...
7          requested by a police officer in a probable
           cause statement, but not authorized by a
8          magistrate, would trample that right.

9         Defendant further cites *People v. Lowery*, 145 Cal.App.3d 902

10   (1983) and *People v. Grossman*, 19 Cal.App.3d 8 (1971).

11        In *Lowery*, the defendant argued that seizure of unmarked

12   integrated circuits exceeded the scope of the warrant because the

13   warrant described marked Intel and Synerteck circuits only.  145

14   Cal.App.3d at 908.  The Court of Appeals rejected the contention:

15         It is well established that items not
           particularly described in a search warrant
16         may be seized if there is a 'nexus' between
           them and the suspected criminal behavior, so
17         that the scope of the search is
           'circumscribed by the reasons which justified
18         its inception.' ....

19         In the instant case, the supporting
           affidavits indicated that some integrated
20         circuits among those in appellant's
           possession when he was arrested were
21         unmarked, and items named in the warrant
           included a marking machine and plates.  There
22         is a perfectly clear connection between the
           unmarked ICs and the materials specifically
23         authorized to be seized.

24   *Id.*

25        In *Grossman*, the search warrant authorized a search of

26   "Apartment A" at a properly described address.  At issue was

                              20

whether that description included the carport cabinet marked "A".

In upholding the search, the Court of Appeals held:

> We reach the same general result applying general principles of interpretation of the description of the premises to be searched contained in a warrant. At most, the description here employed is ambiguous in the sense that there may be a doubt whether the description of 'Apartment A' includes the carport cabinet marked 'A.' That ambiguity is to be resolved by reference to the affidavit supporting the warrant. The affidavit in turn makes clear the fact that the description is intended to include the carport. So interpreted, the description in the warrant is not overly broad. Since it limits the area of search to apartment A and the appurtenance to the apartment in the form of the carport cabinet expressly identified with it, there is no danger of intrusion upon the rights of persons other than respondent occupying the multiple unit dwelling.

19 Cal.App.3d at 12-13.

Both parties cite *People v. Moore*, 31 Cal.App.3d 919 (1973).

In *Moore*, a search warrant was issued for defendant's premises. The affidavit in support of the search warrant averred that defendant had violated Health & Safety Code §§ 11910 and 11912 by possessing and selling restricted dangerous drugs, that the affiant police officer had received information from a reliable confidential informant to the effect that he saw defendant on July 2, 197 counting and packaging approximately 6,000 Seconal capsules, that another police officer had advised that a juvenile had told the officer that defendant was a pusher of dangerous drugs and that numerous high school students had told the officer that defendant dealt in dangerous drugs, and

1  that the vice principal of the high school had told the affiant

2  officer that defendant had been expelled after he came to school

3  high on drugs.   The affidavit set forth facts sufficient to

4  justify issuance of the warrant.   However, the magistrate used a

5  form warrant printed for use in narcotics cases.   The form

6  contained blank spaces for filing in the names of the affiant and

7  the accused, the dates of presentation of the affidavit and

8  issuance of the warrant, a description of the premises to be

9  searched, the name and signature of the issuing magistrate, and

10  the code sections alleged to have been violated.   The printed

11  portions of the warrant referred only to narcotics and

12  paraphernalia used in connection with narcotics.   The blanks were

13  all properly filled in with information conforming to that

14  contained in the affidavit.   Consequently, there was an ambiguity

15  on the face of the warrant because the filled-in portion referred

16  to code sections dealing with restricted dangerous drugs while

17  the printed portion referred to narcotics.   31 Cal.App.3d at 922.

18  In upholding the search, the Court of Appeals ruled in pertinent

19  part:

20          [T]he sufficiency of the affidavit to support
            a warrant for the seizure of dangerous drugs
21          is not disputed.   The affiant police officer
            laid before the magistrate facts which that
22          judicial officer considered, in the exercise
            of his independent judgment, sufficient to
23          allow the defendant's privacy to be invaded
            in the public interest.   The form warrant
24          referred in its printed portions to narcotics
            but the filled-in portions related to a
25          violation of the dangerous drug laws.   We
            think it significant that the search and
26          seizure was conducted by the same police

officer who had sworn the affidavit.  A
warrant must be sufficient to allow the
officer to ascertain what is authorized.  In
this instance, the searching officer
obviously knew what it was he was looking
for.  No general 'fishing expedition' is
alleged.  The affidavit stated that dangerous
drugs were on the premises, the warrant was
issued with the intent that dangerous drugs
be seized, and it was dangerous drugs that
were searched for and seized.  If the warrant
had been delivered to an officer unfamiliar
with the facts as stated in the affidavit and
he had not noticed the ambiguity, but had
instead conducted a search for narcotics and
during that search found dangerous drugs, we
would have a different fact situation
requiring different considerations.  But that
case is not before the court.  All that must
be decided is whether a warrant is void
because of an ambiguity on its face when that
ambiguity cannot mislead the persons involved
and has resulted from clerical error in using
the wrong form.

...

[I]t seems settled that the mere fact that
there is on the face of a warrant some error,
omission or ambiguity, is not sufficient to
defeat the validity of the warrant.  The
cases seem generally agreed that reference
may be made to the underlying affidavit when
the warrant carries some defect upon its
face.

...

It is obvious that the error which occurred
in the preparation of the search warrant here
involved was purely clerical in nature.
Clearly, the issuing magistrate intended to
direct a search for dangerous drugs and only
by reason of clerical error did he fail to
insert such direction on the face of the
warrant.  While we do not condone
carelessness on the part of the magistrate in
failing to note such error, we conclude that
the defect did not in any way substantially
prejudice the rights of the defendant.

23

1 | *Id.* at 925-927.

2 |     Defendant argues that, in contrast to the cases cited above,

3 | there was no objective ambiguity on the face of the July 30, 2004

4 | search warrant: "The affiant expressly requested permission to

5 | search for the items listed in attachment A; the magistrate

6 | expressly authorized a search for the items listed in attachment

7 | A; and the warrant expressly limited the search to the items

8 | listed in attachment A."  While Officer Horn may have

9 | inadvertently failed to include computers in attachment A,

10 | Defendant argues, his inadvertence did not create an ambiguity:

11 |         Rather, the warrant is crystal clear.  It
        authorizes a search for the items listed in

12 |         attachment A.  It does not authorize a search
        for any other items listed in the statement

13 |         of probable cause.

14 |     The United States argues that, as in *People v. Moore*, the

15 | July 30, 2004 search warrant was not defective due to the "mere

16 | omission" of one item set forth in the statement of probable

17 | cause from the list of items to be seized set forth in Attachment

18 | A.  The United States argues:

19 |         Judge Kirihara confirmed that he intended to
        authorize the search and seizure of computers

20 |         pursuant to probable cause shown in Officer
        Horn's affidavit.  He also testified that the

21 |         omission of the word 'computers' was a simple
        mistake.  Moreover, Judge Kirihara confirmed

22 |         that, in the state system, the search warrant
        face sheet and the affidavit are considered

23 |         one document and filed as one, thus
        permitting this court to consider the

24 |         contents of the affidavit in determining
        whether the warrant sufficiently guided the

25 |         officers in the search of defendant's
        residence.  Finally, the fact that Officer

26 |         Horn was in charge of executing the search

warrant prevented the seizure of unauthorized
items as it was Officer Horn himself who
wrote the affidavit in support of the warrant
and was presumed to know exactly what he was
seeking.

## CONCLUSION

Defendant's motion to suppress evidence seized pursuant to the July 30, 2004 search warrant on the ground of facial invalidity is DENIED.  The record establishes that the failure to include computers in Attachment A was the result of mistake and oversight.  Judge Kirihara intended that the items to be seized pursuant to the July 30, 2004 search warrant include computers based on the statement of probable cause submitted by Officer Horn.  Officer Horn both submitted the statement of probable cause with Attachment A to Judge Kirihara for his review and consideration in issuing the search warrant, and Officer Horn executed the search warrant.  Under these circumstances and with this record, the particularity requirement of the Fourth Amendment was satisfied even though the statement of probable cause was not incorporated by suitable words of reference into the description of items to be seized.[2]

IT IS SO ORDERED.

Dated:   May 4, 2007             /s/ Oliver W. Wanger
                           UNITED STATES DISTRICT JUDGE

---

[2]This conclusion makes it unnecessary to address whether the "good faith exception" to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984), applies.